## Pennsylvania Labor Relations Board v. Levin, etc.

Charles S. Schermer, for appellant.

Max C. Baylinson and George L. Reed, for Labor Relations Board.

GORDON, JR., P. J., March 3, 1944.—This case comes before us in two forms, first, on appeal by defendant employer from the finding and decision of the Pennsylvania Labor Relations Board that a majority of defendant's employes were members of the Shoe Rebuilders and Orthopedic Workers' Union, Local No. 131, of Philadelphia, which the board also designated as their sole bargaining agency, and ordering defendant to desist from a certain alleged unfair labor practice, and, second, upon a petition by the board for enforcement of its order.

The principal questions presented for our consideration are:

1. Whether the evidence before the board supports its findings that a majority of the defendant's three employes are members of the union, and desire to be represented by it in bargaining with defendant, and,

2. Whether, if the findings are not so supported, we should refuse the petition for enforcement or refer the case back to the board for further proceedings.

Defendant operates two shoe-repairing shops in the City of Philadelphia, located in the same general neighborhood, and in which, altogether, he employs three men. On December 31, 1942, Samuel Lewis, a representative of the union in question, addressed a letter to defendant, asserting that a majority of his employes were members of the union he represented,

and demanding that defendant bargain with it exclusively in matters pertaining to his relations with his employes. Lewis gave defendant until January' 5, 1943, to comply with his demands, threatening to take action before the Labor Relations Board, if defendant failed to comply by that date. Having received no answer to his letter, Lewis called defendant on the telephone on January 6, 1943, asking for a conference. This was held two days later, when various terms of an agreement proposed by him were discussed. At that time defendant's three employes were David Katz, Aaron Cohen, and Max Cohen, of whom only the first two were union members. On January 15, 1943, Lewis again telephoned defendant, who refused to sign the agreement submitted to him. On January 18th, three days later, in pursuance of a threat made by Lewis to defendant to "sign or go before the board", the complaint was filed which is the basis of this litigation, charging the employer with interfering with his employes' right to self-organization, and with refusing to recognize and bargain with the union as their sole bargaining agency. Meanwhile, on January 16th, Aaron Cohen, one of defendant's union employes, terminated his employment. This left in defendant's employ, when the complaint was filed, only David Katz and Max Cohen, the latter of whom was not a member of the union, and on January 19th, Carmen Fanelli a former employe of defendant, returned to work. Fanelli had once signed an application for admission to the union, but its agent, Lewis, conceded before the board that Fanelli had never become a member.

Thus, the evidence established that at no time after the complaint was filed, and before the board's order was made, were a majority of defendant's employes members of the union, and it developed at the oral argument, although it is not disclosed by the record, that none of his present employes is a union member. No

open-minded reading of the testimony can lead to any other conclusion. Yet, entirely ignoring the evidence, the board found that the union represented a majority of the employes, and that defendant had been guilty of an unfair labor practice by refusing to deal with it. A finding by a quasi-judicial body, so manifestly contrary to the evidence before it, indicates a bias and partisanship inconsistent with a proper appreciation of its judicial function. If there had been any question, under the evidence, of the union's majority representation of the employes, the board could have resolved that question definitely and conclusively, either by asking the employes whether they were members of the union and desired it to represent them, or by ordering an election, which, in view of the small number of employes, could have been held in less than 24 hours: N. L. R. B. v. Fansteel Metallurgical Corp., 306 U. S. 240, 261-262; Hamilton-Brown Shoe Co. v. N. L. R. B., 104 F. (2d) 49, 56 (C. C. A. 8th, 1939). See also cases collected in note, 144 A. L. R. 445, 446. The board did neither, however, and made a finding wholly unsupported by evidence, which served only to place it in the questionable position of abetting a union in its efforts to inject itself, without right or authority, into a matter with which it had no legal concern, and arbitrarily to subject the affairs of the employes, as well as the employer, to its dictatorial control. The Labor Relations Board is charged with the duty of according to both sides, in the delicate questions that come before it, a fair hearing and enforcement of their rights, and indifference or failure in the performance of that duty tends to undermine confidence in a system established for the impartial settlement of labor disputes, and holds out little hope for the public welfare and industrial peace it was created to promote.

But, even if a majority of the employes had been union members, we think it is clear that the union was

not entitled to act as their bargaining agent under the facts of this case. After the proceedings were begun, an attempt was made by the board's trial examiner to adjust the controversy amicably, and on February 16th the employer, who professed no objection to recognizing the union, if it properly represented his employes, tentatively agreed to terms of employment, which were to be put into writing and executed on the following day. He testified that up to that time he had not discussed the subject directly with his employes, assuming that the assertion of the agent, Lewis, that a majority of them were members of the union was truthful. He also testified that his refusal, on the following day, to recognize and bargain with the union was because, when he communicated to his employes the terms of the agreement that had been reached, they had indignantly rejected it, and that they threatened to quit in a body on account of certain of its provisions, declaring in respect to the union, "Who are they? They are not our [my] boss to tell us [me] how to work". Of course, this testimony came from the employer, whose veracity was for the board's determination. It is uncontradicted, however, and, if true, established a complete repudiation of the union as their bargaining agent by the employes themselves. Union membership is not the final test of bargaining agency, for it does not give the union an absolute and irrevocable right to speak for its members regardless of their willingness to be represented by it. They may select whatever agency they please to bargain with the employer on their behalf, and their unfettered right to do so is an essential condition of economic freedom, of which the law never has, nor presumed to, deprive them. Presumptively, of course, membership carries with it the implication of a voluntary selection of the union by the members as their bargaining agent. When, however, the members, as employes, expressly repudiate

the union for bargaining purposes, as is the case here according to all the available information upon the subject, its authority to represent them falls. Such a repudiation might result in a loss of union membership by the employes, but neither the union, nor the board, can force representation by a union upon a group of employes a majority of whom have rejected its services. In the light of the employer's testimony, therefore, it is inexplicable why the board did nothing to ascertain their real wishes from the employes themselves before rendering a decision that ignored their rights, if it did not thwart their express wishes in the matter.

Were there a real question of majority representation by the union in this case, we would send it back to the board to find the truth upon that subject. But the testimony, which establishes beyond a doubt that, at best, only one of the three employes was a member of the union, would, in the absence of proof of unlawful interference by the employer with the right of self-organization, prevent the issuance of an order that would force upon the group as a whole a bargaining agent to which a majority, and probably all of them, appear to be total strangers. This fully justified defendant in refusing to bargain with the union and nullifies the board's captious finding that defendant was guilty of an unfair labor practice in so doing. To decline to recognize and contract with unauthorized persons, or to refuse to deal with a self-styled bargaining agent before his authority so to act is established, is not only the right but the duty of an employer, and to characterize such refusal as an unfair labor practice is a misnomer. Otherwise, bona fide assertions of rights, or honest attempts to perform duties, would become so precarious that one would be tempted to do wrong through fear of the consequences that might follow doing right.

For the foregoing reasons the petition is granted, and the findings, decision, and order of the Pennsylvania Labor Relations Board are reversed and set aside, and the board's petition for enforcement of its order is dismissed.